[No. 5813.]

THE FARMERS PAWNEE CANAL COMPANY v. THE PAWNEE WATER STORAGE COMPANY.

1. Appeals — Finding — Insufficient Evidence — Findings of fact upon evidence clearly insufficient, will be set aside.—(246)

2. Principal and Agent—Powers of General Manager — The general manager of a corporation operating an irrigating canal has no implied authority to waive performance of an important provision in a contract between his principal and another corporation.—(247).

3. Contracts Construed — Defendant owning an irrigating canal entered into an agreement with plaintiff, a corporation organized for similar purposes, granting the right of using and enjoying its canal for carrying water to any reservoirs constructed along it, with the right to extend it "to such extent as may be requisite to convey water to the lands, canals or reservoirs now owned or hereafter acquired" by plaintiff; and the right of building laterals, branches and extensions to convey water and seepage

water directly to purchasers from plaintiff. The 8th clause provided that the plaintiff should "complete a system of reservoirs along and under the line of said canal within five years * * * and if, at the termination of said period," defendant should have "failed to have used said canal for the purposes referred to in this contract, then all the rights and privileges herein mentioned granted by said Canal Company to said Storage Company shall be waived, and this contract shall be void." By the 9th clause, the parties agreed to "co-operate, to the end that the widest service of the canal, and the storage system shall obtain, and the largest public utility result." Held, that, whether the 8th clause be construed as a condition precedent, a condition subsequent, or a mere covenant, it was a substantial and essential agreement on the part of the plaintiff, a substantial part of the consideration moving to defendant, and the plaintiff was bound to perform it within the period limited; that, in view of the 9th clause, the circumstance that the system of reservoirs when complete would belong to the plaintiff, and plaintiff would be entitled to all profits of their operation, or that, in view of a change in the situation it appears that the reservoirs would have been unprofitable, will not change the result.—(243-250)

   4. **Contracts — Part Performance —** Held, further, that the excavation by plaintiff, at great expense, of what was intended as an extension of the defendant's canal, but never connected with it, did not excuse the failure to construct the system of reservoirs.—(248)

   5. **Forfeiture—Relief in Equity—**Held, further, that the provision of the 8th clause of the contract not having been waived by the defendant, equity would not restrain defendant from enforcing its rights thereunder; and the fact that the injury occasioned to defendant by the failure to construct the reservoirs would be difficult of ascertainment, affords a substantial reason why equity should not interfere.—(251)

   6. **Estoppel—**Held, that defendant's operation of its canal turning the water into it for supplying the needs of its customers, at a time when defendant was in lawful and exclusive possession, was no estoppel upon defendant to assert its rights, though the effect was to drive out plaintiff's employees while engaged in the enlargement of the canal, with a view to connect with the new extension, thus preventing the completion of the work until the period limited in the agreement expired, and though two of the five directors of the defendant were aware of the expenditure being made by plaintiff in the extension. —(248)

*Error to Logan District Court*—Hon. E. E. ARMOUR, Judge.

Mr. J. P. BROCKWAY, Mr. C. R. BELL, Mr. H. E. LUTHE, and Mr. S. E. NAUGLE, for plaintiff in error.

Mr. JOHN R. SMITH, Mr. GEORGE McCONLEY, Messrs. DORSEY & HODGES, and Mr. R. L. HOLLAND, for defendant in error.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

The object of this action is to relieve against a threatened forfeiture of certain rights and privileges which plaintiff storage company claims it obtained as the result of a contract which it entered into with defendant canal company. The character of this contract, made December 5, 1898, is disclosed, and its material provisions which gave rise to the pending controversy are embodied, in paragraphs 1, 2, 8 and 9, which are substantially as follows:

1. "That for and in consideration of $1 in hand paid by said Storage Company, to the said Canal Company, the receipt of which is hereby acknowledged, and in consideration of the premises and the undertakings herein set forth, to be kept and performed by the said Storage Company, the said Canal Company hereby grants to the said Storage Company, its successors and assigns, the right and privilege of using and enjoying its canal and headgates, for the purpose of conveying water to any and all reservoirs constructed along the line of said canal owned by the said Canal Company, * * * with the right to extend and enlarge the said canal, or any section of the same, to such extent as may be requisite to convey the waters of the South Platte river and its tributaries to the lands, canals and reservoirs now

(16)

owned or hereafter to be acquired by the Storage Company.''

2. "The Canal Company also grants to the Storage Company the privilege of building laterals, branches or extensions of the Canal Company's canal, through which surplus, waste and seepage water might be conducted and delivered direct to purchasers from the Storage Company.''

8. "It is further agreed and understood that the said Storage Company shall complete a system of reservoirs along and under the line of said canal within five years from the time of the ensealing and delivery of these presents, and if at the termination of the said period the said Storage Company shall have failed to have used said canal for the purpose referred to in this contract, then all of the rights and privileges herein mentioned and granted by the said Canal Company to the said Storage Company shall be waived, and this contract be void; otherwise it shall remain in full force and effect.''

9. "It is hereby agreed by the parties hereto to co-operate to the end that the widest service of the canal and the storage system shall obtain, and the largest public utility result.''

Other clauses particularly define the reciprocal rights and duties of the parties, and the limitations, as to the nature, and length of time, of the use of the canal, to which they are subjected when the contract is fully performed.

The principal dispute concerns the eighth clause. The parties are not in accord as to its meaning or the proper construction of the contract as a whole. The plaintiff says that this clause is a mere covenant and the only remedy for its breach an action for damages; but if not a covenant, then it is a condition subsequent, which does not prevent the vesting of the estate which is the subject-matter of the contract,

but only defeats it in case of nonperformance. Defendant says that taking the contract, as should be done, in its entirety, clause eight constitutes a condition precedent; and while in the first clause the language is "hereby grants," yet, since by a fair construction of the entire contract the use and enjoyment of the canal could not, in the nature of things, be had until after the completion of the system of reservoirs, the vesting of the estate is necessarily deferred until full performance of the condition precedent; and as, confessedly, as will be seen later on, the condition was not fulfilled, plaintiff never acquired the rights under the contract which it would have obtained had the condition been performed. These contentions will be further referred to in an appropriate place in the opinion, but we shall decide this case, as that is the most favorable view, in plaintiff's favor, on the assumption that the clause in question is a covenant, or condition subsequent. It will be observed that by its terms the storage company was required to complete a system of reservoirs along the line of defendant's canal within five years from the time the contract went into effect, and there was to be a forfeiture by the storage company of its contract rights, if, at the end of the five years, it failed to use the canal for the purposes therein referred to. Notwithstanding the language of the first paragraph, which says that the consideration moving from the storage company is one dollar and the undertakings set forth in the contract itself, the storage company says that the principal, if not the only, consideration of value to defendant was a previous settlement of all controversies concerning their relative rights made by the original owner and builder of the canal, to whose rights the plaintiff storage company here has succeeded, with its water consumers who are represented here by defendant

canal company. Although this claim is denied, in disposing of this case we may assume that that settlement constituted a part of such consideration. Until the contract itself is reformed the storage company, however, cannot be heard to say that it was not required by this contract, among other things, to complete a system of reservoirs along and under the line of defendant's canal as clause eight says.

For about three years and a half after the date of the contract, plaintiff did practically nothing towards performing any of the conditions which were named as the consideration for the things granted to it. In the summer of 1902 it began preliminary surveys for the prescribed reservoirs and made filings under the statute. No actual work in the way of building reservoirs was then, or ever, done. The system along the line of defendant's canal contemplated was for the storage of water by means of which government lands, and lands owned by private individuals, favorably situated, might be irrigated. Some time during the summer of 1902 the United States government withdrew from entry its lands in this neighborhood, and it was publicly announced and generally understood in that part of the country that the government contemplated the building of a large reservoir with which to irrigate both public and private lands. Plaintiff company then entirely ceased all operations with the avowed intention of abandoning its enterprise, after having reached the conclusion that this project of the government, if consummated, would render commercially unprofitable the system of reservoirs and extension and enlargement of defendant's canal which this contract contemplated on its part. Nothing further under the contract was done by plaintiff until some time in the spring or early summer of the year 1903. The United States government abandoned its project in July, 1903. Plain-

tiff's president having obtained information of the proposed abandonment about three months before it was publicly proclaimed, concluded to go on with a part of the scheme contemplated by the contract. It began then, in March or April, 1903, the work of building a ditch below the end of defendant's canal, twelve or fourteen miles long, which it proposed to connect therewith, nearly completed the same and lacked but a few feet of actually connecting it with defendant's canal. It did not, however, finish this work within the limited period of five years, which was December 5, 1903, and never has done so.

Plaintiff seeks to avoid the forfeiture of its rights as the result of its failure to build a system of reservoirs, which it has avowedly abandoned and admits that it does not propose to construct, on the ground that by a subsequent agreement it was released from that obligation. For its failure to complete the extension of, and to use, the canal for the purposes mentioned in the contract within the period of five years it says that defendant actively. and wrongfully interfered therewith, and, besides, is estopped to insist upon its right to terminate the contract on that account because of its own conduct, which would make it inequitable now to do so. These contentions present the important questions for decision.

There is testimony by the president of plaintiff company that the advent of the government with its reclamation scheme so upset its plans that, until the government gave up its project, there was no intention by plaintiff to carry out the scheme outlined in the contract. When the government decided to withdraw, the plaintiff company again proposed to carry out the contract scheme in part, but not in its entirety. Because of the unsuccessful efforts of the officers of plaintiff company to enlist the co-operation of

land owners who might be supplied with water from the contemplated storage system, the storage company entirely abandoned its intention to construct a system of reservoirs along the line of defendant's canal, but it did propose to make an extension of the canal, which, by the terms of the contract, it might do. The abandonment of the reservoir scheme was not because reservoirs were not feasible as a matter of fact, but because plaintiff concluded that, for the reason indicated, it would not be a remunerative business proposition. This conclusion upon the part of plaintiff in itself, of course, would not relieve it of its contract duty to build them unless such obligation was in some way discharged by the defendant; and that is just what the plaintiff pleads and attempted, unsuccessfully, to prove. The trial court in its findings and decree says that defendant has waived its right to insist upon a forfeiture of plaintiff's rights under the contract because of plaintiff's failure to perform the conditions imposed upon it. It is not clear that the trial court intended to find that defendant waived that clause of the contract requiring plaintiff to build the system of reservoirs, as the use of the word "waiver" was in connection with estoppel *in pais* which, the court said, precluded defendant from insisting upon a forfeiture arising from plaintiff's failure to complete the extension of the canal and to use it within five years. But if the trial court intended to find, or did find, that the parties agreed that the system of reservoirs need not be built, the evidence will not support the finding. The only evidence in plaintiff's favor upon that issue is to be found in the testimony of Mr. Henry, plaintiff's president, who says that Mr. Henderson, the secretary of defendant company, was in accord with him that the reservoir scheme was not feasible as a business proposition. And while Mr. Henry does not expressly

say that there was an agreement of waiver of that clause, by inference at least, he says that such was the understanding of the parties. There were five directors of defendant corporation, and Henderson was one of them. He was not, as asserted by Mr. Henry, the general manager of the company; but, if he was, that circumstance alone did not give him power to waive this condition. The board did not give him authority to waive it, or hold him out as possessing such authority. None of the other directors, so far as the record shows, ever knew, or heard of, or ratified any such alleged agreement of waiver. The contract, therefore, in this respect was never modified or abrogated, and plaintiff has never been released from its obligation to build the system.

Even a cursory reading of the contract shows that plaintiff was not required to extend defendant's canal. Plaintiff was given the privilege of doing so, which might, or might not, be exercised at its pleasure. In one sense, therefore, the extension of the canal was no part of the consideration for the rights and privileges which were given to plaintiff. If, however, in a certain contingency the extension of the canal was a part of such consideration, it was only a part, and not all, and even if such part of the consideration was rendered, it would not excuse or justify the failure of plaintiff to fulfil the other and imperative condition, the building of the system of reservoirs. While not necessary for us definitely to determine whether defendant wrongfully interfered with plaintiff's work of constructing a ditch, or, by its conduct, is estopped to take advantage of the failure to complete the same and to use the canal for the purposes mentioned in the contract within the prescribed period of five years, it is doubtful if the alleged obstruction was wrongful, or the estoppel pleaded sufficiently established. As to the former,

complaint is made that while plaintiff was engaged in enlarging defendant's canal, before making connection thereof with plaintiff's newly-made ditch, defendant turned water into its canal, which drove out the workmen, and the work could not be resumed till after the five years' limit passed. This was at a time when, under the contract, defendant had the right of exclusive possession of its canal, and water was turned into it because the water consumers needed it. Plaintiff did not formally ask the privilege of using the canal for the purpose in hand, and was not accorded such privilege by defendant, though the work of enlargement was undertaken on the supposition that no objection would be made. Plaintiff took its chances when, after the long delay, it began the extension work and hoped to complete it during the irrigating season, when it had no right at all to use defendant's canal.

It is true that two of the five directors of defendant, but so far as the record shows none of the other three, were aware that plaintiff was engaged from about March until some time in November of 1903 in the work of building a ditch, which, apparently, it was its intention to connect with the canal of defendant. These two directors made no objection to the same, neither did they say to the officers of plaintiff that, if the work was not done, or the canal used, within the time limited, defendant would insist upon its right to terminate the contract. These circumstances, however, are not sufficient to create an estoppel. There is an entire absence of allegation in the complaint, and of any evidence that plaintiff would not have gone on with its work of extension, even if it had been reminded by defendant that all conditions should be performed within the time limit, else a forfeiture would be enforced. There is no evidence that the two directors of defendant knew that

the time limit would, or could, not be observed by·
plaintiff.   So that we might well conclude, if it were
necessary, that the estoppel pleaded had not been
proved.   But, as already indicated, the plaintiff,
while not required by the contract to make an exten-
sion of the canal, was under obligation to build a
system of reservoirs, from which it has never been
released, and that is the only thing which, as a con-
sideration for the grant, it positively agreed to do.
As it plants itself with respect to that issue upon the
proposition that it was released from that obligation,
which claim we have already held was not estab-
lished, the court was wrong, upon the undisputed
facts, in deciding that plaintiff company had sub-
stantially performed all of the conditions of the con-
tract to be performed upon its part, and that defend-
ant had waived its right to end the contract and, by
its own conduct, was estopped to enforce such right.

In thus disposing of the case, as already sug-
gested, we have not found it necessary to pass upon
the opposing contentions as to the proper construction
of clause eight.   If it constitutes a condition prec-
edent, of course no right to use defendant's canal was
ever vested in plaintiff, because the condition named
was not complied with.   The same result, however,
is reached if the clause is to be regarded as a condi-
tion subsequent, or a mere covenant.   In neither
event was the important condition or covenant in the
contract which plaintiff was obliged to perform ever
fulfilled, and, if the estate ever vested, it was after-
wards defeated or destroyed.

The decree which gave plaintiff the right to
enter upon defendant's canal at any time within
seventeen months, to date from the entry of the de-
cree below, or from its affirmance in this court in
case of a review here, and that the work of enlarge-
ment of the canal should be deemed a full perform-

ance of the conditions imposed upon plaintiff, and that the canal should then be deemed to have been used for the purpose mentioned in the contract and the conditions of the contract fulfilled, was wholly unwarranted by the evidence.

It is true that a court of equity will not lend its aid to enforce, but, in a proper case, will often relieve against a forfeiture. We are constrained to say that plaintiff's *laches,* its change of purpose, from time to time, as to performing the contract, its unexcused failure to render the only consideration for the grant which it bound itself to give, compel us to deny the relief it asks. In the very nature of things the mere enlargement of the canal is not the equivalent of the use by plaintiff of the canal for the purposes mentioned in the contract. Those purposes included the use of the canal for conveying water to be stored in reservoirs along its course that were to be built by plaintiff, and if they were not built it was impossible for plaintiff to use the canal for all the purposes mentioned in the contract.

Apparently it was a controlling consideration with the trial court that defendant company, as it was said, suffered no injury as the result of the non-compliance by plaintiff with the terms of the contract. The argument seems to be that the system of reservoirs, if built, and the extension of the canal, if made, were to be the property of the plaintiff, and whatever profits were realized through the storage and sale of water would belong to plaintiff and not to defendant. Such reasoning is not satisfactory. Usually it is for the covenantee, not the covenantor, for the party for whose benefit a condition is imposed, not for the one who is to perform it, to say whether it shall be kept or observed. And we might well conclude that when paragraph eight was inserted it was so because defendant regarded it as important

and of value to itself. But we do not need to invoke
that principle, for clause nine expressly enjoins upon
both parties to co-operate to the end that the widest
service of the canal and the storage system shall ob-
tain and the largest public utility result. Such re-
sult could not be attained, and the widest service
could not be realized, if the reservoirs were not built.
Defendant was interested that the spirit of this con-
tract should be observed by plaintiff. If the pro-
posed system of reservoirs was built, even though it
should belong to plaintiff, and defendant's water con-
sumers could not use the water from the reservoirs
upon their own lands, nevertheless the construction
of the system would materially contribute to the de-
velopment of that part of the country, tend to increase
its population, directly enhance the value of the hold-
ings of defendant and its stockholders, widely extend
the service and increase the use of water in the great
industry of agriculture. It is true that where no
material injury results to one party to a contract
who is seeking to terminate it for nonperformance
by the other, a court of equity may afford relief. Yet
we do not think the facts of this case bring it within
that doctrine. It is doubtless true that it would be
difficult to estimate, in money, the damage to de-
fendant which the failure to build this system has
occasioned. That fact, instead of being a reason for
giving relief to plaintiff, affords a substantial reason
—in that a money equivalent cannot be given—why
defendant should not be enjoined from enforcing its
right to terminate the contract. This would be true
even though plaintiff was here offering to give com-
pensation in money, which it is not. It is to be re-
gretted that plaintiff company has expended, as it
claims, from thirteen to twenty thousand dollars in
the work of extending this ditch for which it has
obtained no equivalent. That loss, in the absence of

fault in defendant, does not justify a court in abrogating the solemn contract which the parties themselves voluntarily made, or, without reason, modifying the same, or making a new contract for them which materially changes their contract rights. The judgment therefore must be reversed and the cause remanded.          *Reversed and remanded.*

CHIEF JUSTICE STEELE and Mr. JUSTICE MUSSER concur.