## No. 11,964.

### ADY v. DODGE.

Decided December 19, 1927.

Action to compel reassignment of applications for patents. Decree for plaintiff.

### *Affirmed.*

### *On Application for Supersedeas.*

1. CONTRACTS—*Termination.* Where one party to a contract keeps his part of it, but the other refuses to perform, it is thereby terminated.

2. APPEAL AND ERROR—*Judgment—Presumption.* On review disputed questions of fact must be resolved in favor of the decree.

3. *Judgment.* On review, a party may not complain of a provision in the decree which is in his favor, nor of one that does not injure him.

4. CONTRACTS—*Extension.* Where, under the terms of a contract, a party could terminate it at his option, he cannot complain because he did not terminate it sooner, nor because of money spent because of his own extension of its terms.

5. APPEAL AND ERROR—*Decree.* A judgment will not be reversed because of the omission therefrom of a provision which the complaining party did not request, and which would not have been contested if requested.

6. CONTRACTS—*Binding on Courts.* Courts are bound by the mutual terms of a contract which are definitely fixed by the parties.

*Error to the District Court of El Paso County, Hon.
Wilbur M. Alter, Judge.*

Mr. LEON H. SNYDER, for plaintiff in error.

Mr. WILLIAM C. ROBINSON, for defendant in error.

*En Banc.*

MR. JUSTICE ADAMS delivered the opinion of the court.

DODGE, defendant in error, plaintiff below, obtained a
decree against Ady, as trustee (hereinafter called Ady),
ordering the latter to reassign to plaintiff, certain ap-
plications for patents of Dodge's inventions pending in
the United States patent office, which applications stand
in defendant's name. The decree was conditional, as
hereinafter explained. Defendant brings error and asks
for a supersedeas. Both parties request final deter-
mination on such application. Dodge is hereafter re-
ferred to as plaintiff and Ady as defendant, their align-
ment in the district court.

On April 22, 1924, Dodge and Ady entered into a
written agreement, which recited, in effect, that Dodge
had filed in the United States patent office applications
for patent upon certain electrical devices, and that Ady
was desirous of entering into arrangements for the de-
velopment of those and other devices. Therefore Dodge
assigned, under the contract, the patent applications
to Ady, and agreed to assign his rights to the latter in
other discoveries subject to such written contract. Dodge
agreed to devote full time for one year in the work of
developing and perfecting such inventions and others of
commercial or protective importance, he to receive $250
per month for the year for his personal services, to be
paid by a syndicate to be formed by Ady, Dodge to
further receive 50 per cent of the profits of the syndi-
cate. The syndicate was to consist of five members, who

were to subscribe $25,000 in all, payable in installments. $3,000 of the amount was to be used to pay Dodge, and $2,000 "for the purchase of material, government's fees, and for such other purposes as is deemed wise and necessary by the parties hereto." The contract further recited that the second installment, $20,000, beginning the second calendar year, April 22, 1925, "is to be expended at the discretion of the parties hereto and the syndicate, in and for the purposes of the filing and prosecution of such foreign patent applications as are deemed of commercial or protective importance by the syndicate, and the commercialization of the items herein provided for." The eighth paragraph of the agreement reads: "8. Should this agreement entered into by the parties hereto this day be deemed not successful or satisfactory to the members of the syndicate at any time during the year provided for in this contract, then it is agreed that it may be terminated immediately. All members of the syndicate shall be released from any further duty thereunder, the inventions and patents, if any are obtained in the meantime, and assigned to this syndicate, shall be reassigned to the said Owen Dodge and become his own property without any restrictions on the part of this syndicate."

On March 15, 1925, a written supplemental agreement was entered into, extending the contract for four months more on similar terms, Dodge not having developed his inventions to the state of perfection which he had expected to attain. On August 15, 1925, the agreement was again extended in writing for another four months, and carried the maturity of the second installment, $20,000, to December 22, 1925, at which time it was to be paid "in accordance with the terms of the original agreement."

Dodge received from Ady $250 per month for 22 months, a total of $5,500. Ady also paid for equipment and other items of expense under the contract. Dodge testified that he devoted his full time to the work, but

after the above time, Ady expressed himself as dissatisfied with the progress or lack of progress, and refused to pay Dodge any more money, or his monthly allowance, claiming that the latter should have completed and perfected his inventions, and that he had failed to perform his contract.

The decree was entered on May 7, 1927, and the general findings were for the plaintiff. The court further found that the contract dated April 22, 1924 and extensions thereof expired by their own terms on December 22, 1925, that there had been no extension thereof, and that the $20,000 had not been paid. It decreed a reassignment of the patent applications to Dodge, unless Ady should pay, on or before May, 27 1927, $20,000 in cash, to be used and expended with reasonable diligence as provided in the contract.

1. Dodge testified that Ady terminated the contract, which the latter denies, but since Dodge kept his part of it, Ady's failure and refusal to further perform amounted to a termination. On such termination, the contract is plain that the inventions and patents shall be reassigned to plaintiff, and so the decree in this respect is right, inas-much as it is simply for specific performance of the agreement. The pleadings and evidence bring it within the rule.

2. It is true that Ady claims that Dodge did not perform his part of the agreement, but there is evidence that he did so, and this disputed question of fact must be resolved in favor of the decree. *Boldt v. Motor Securities Co.,* 74 Colo. 55, 56, 218 Pac 743. If we should repeat all of the evidence on both sides, it would merely end at the above point.

3. Since Ady terminated the contract, or if it had expired by its own terms, as the court found, the twenty days' grace which the decree allowed Ady to furnish the $20,000 was beyond the power of the court to grant. However, this is immaterial now, because plaintiff did not object to the provision, defendant did not accept the

good offices of the court, and the time for compliance is past. The provision was in defendant's favor; so he cannot complain, and it does not injure plaintiff, as it is no longer operative.

4. Counsel for Ady think that Dodge should "do equity" by reimbursing the former for his expenditures and the $250 per month that Dodge received while working on the inventions. But Ady has had Dodge's patent applications tied up in a contract since April 22, 1924, which has prevented Dodge from interesting other capital, as the evidence shows. The money that Ady paid was only a part of what he should have paid to retain an interest in the property rights. He speculated in the hope of large rewards, and protected himself and his associates by reserving the right to withdraw at any time during the year, if they should deem the agreement "not successful or satisfactory," but it was not agreed that Dodge should reimburse them for their lost venture. The agreement shows that they contemplated the very contingency that arose; namely, the possible disappointment of their expectations, due to Dodge's inability to complete or perfect his inventions within a given time, or for other reasons. Ady himself, acting as trustee, acquiesced in the 22 months' time that it took them to make up their minds to discontinue the experiment, instead of the 12 months as provided in the original agreement. He cannot complain because of his failure to terminate it sooner, or because of money spent by reason of his own extensions of time.

5. The logic of the argument of counsel for Ady is that he ought to get his money back because he did a part of what he undertook to do, but there is no equity in this. Of course counsel does not put it this way; he says that his client more than performed his agreement, but we are governed by the record. Furthermore, Dodge and his counsel both stated in open court that Ady can have whatever is left of the equipment at any time, and that all that is desired of Ady is that he shall assign to

Dodge the patent applications. The condition to return equipment is not in the decree, but we are not advised that counsel for Ady asked to have it inserted, and we shall not reverse the judgment to have incorporated a provision that complaining counsel did not request, and which will be voluntarily complied with.

6. Ady's counsel argues that the time is not yet ripe for the procuring of the $20,000 through the syndicate, because the necessity for the use of such money has not arisen. Dodge is not so sure of this, but since the time within which it was to have been furnished for the use of the enterprise is definitely fixed by the parties' mutual contract, it binds us.

7. The further argument of defendant's counsel, that plaintiff still has a 50 per cent interest in any inventions that may be perfected, begs the question. Plaintiff is entitled to that under the contract, but since defendant failed to fully perform, the latter has no interest at all in the inventions or patent applications, and it is not convincing to show that plaintiff may get 50 per cent of the 100 per cent that he is entitled to.

8. Ady's uncontradicted testimony is that he personally advanced a large part of the money paid out under the contract, in fact everything, as we understand it, in excess of $5,000. But this is not to be considered here, for such advancement is, of course, a matter between Ady and his syndicate.

9. Nothing that we have said is intended to impugn the integrity of either party to the suit, or to reflect upon them in any way whatever. We have discarded as surplusage a large part of the contents of the brief written by counsel for Dodge. We think he went beyond the bounds of propriety. The contracts are clear in their terms and intelligently written. They pertain to a matter of large importance to both parties, and we have not the slightest reason to suppose that either of them were actuated by any but the best of motives in entering upon their arrangements. The subsequent dispute was one

in which men might honestly differ, but the trial court found the issues for the plaintiff, and we must agree, for the reasons above given.

Judgment affirmed.