## No. 12,091.

Operative Service Corporation *v.* McIntyre Pump Co.

Decided April 29, 1929.   Rehearing denied May 27, 1929.

Mr. H. A. Hicks, Mr. W. R. Ramsey, Mr. Cass M. Herrington, Mr. Victor Arthur Miller, for plaintiff in error.

Messrs. Crump & Riley, for defendant in error.

*Department One.*

Mr. Justice Campbell delivered the opinion of the court.

The plaintiff, the McIntyre Pump Company, was the owner of a United States patent and patent rights covering a device known as the McIntyre pump and oil well cleaner, and one complete unit or outfit for operating the same. In July, 1925, plaintiff company made a written contract with the defendant Operative Service Corporation, whereby plaintiff sold and asssigned to the defendant the patent and patent rights and exclusive right and privilege to manufacture, build, operate, lease and deal in other units of such device on a royalty basis of 10 per cent of the net earnings that defendant might derive from its exercise of the rights conferred by this contract upon it. The assignee corporation agreed that with all due diligence it would commence operations and continue its efforts to push operations in the business as rapidly

as may be in keeping with good business methods, to render quarterly statements of the condition and progress of the enterprise, and make royalty and other payments to plaintiff at the time and as provided in the contract. When so required by the defendant the plaintiff was to render any assistance and give advice and information necessary in connection with the business, for which the defendant was to pay a reasonable salary or compensation. And plaintiff was also, as soon as practicable after the execution of the contract, to turn over to the defendant all equipment, completed units, machinery and tools then in plaintiff's possession, including the patent and patent rights and also future improvements upon the patents, if any, and maps and blue prints and other helps. The important part of the contract involved here is the following:

"It is further stipulated and agreed that if the party of the second part shall default in the payment of such quarterly royalties as hereinabove provided, or default in the making of said other payments above provided, when and as the same become due, or shall default in rendering said quarterly statements of the condition and progress of said enterprise, as herein provided, and such default shall continue for a period of sixty days after due, then and in that event, as well as in the event of evidence of fraud, on the part of the party of the second part, that may be discovered by party of the first part, said party of the first part, its agent or representative shall have the right and option to cancel and forfeit this contract and agreement, and all machines, equipment, tools, drawings, blue prints, maps and helps, patent and patent rights heretofore turned over and to be turned over to the party of the second part by the party of the first part, shall be returned to the party of the first part or its agent or representative in as good condition, ordinary wear excepted, as the same were received by the party of the second part, and all rights and privileges

of party of the second part herein shall thereupon cease and this contract become null and void.''

The complaint, after thus alleging the facts, averred full compliance by the plaintiff with the terms and conditions of the contract on its part to be performed, and that defendant has defaulted in the covenants and terms of the contract upon its part to be performed and is now in default in the following particulars: That due to its failure and neglect to operate the pump and oil well cleaner for profit there have been no net earnings made or received; that because of such failure there became due and owing to this plaintiff at the end of each three months' period subsequent to the date of the contract the total sum of $300; that though 21 months have elapsed since the date of the contract defendant has failed, refused and neglected to pay any of the quarterly payments which the contract calls for or any part thereof, except the sum of $600; that defendant has failed to use any diligence to continue operations or its efforts to push the business of manufacturing, building, operating, buying, leasing and dealing in the said device; that defendant has failed to render the quarterly or any statements of its condition or progress. For these reasons plaintiff has heretofore elected, and now elects, to declare the contract canceled and all rights of the defendant thereunder forfeited by reason of the latter's default and has demanded back all machinery, equipment, tools, drawings, blue prints, maps and patent rights and the complete unit of the device heretofore turned over to the defendant under the contract. The specific relief asked is that the contract be declared and decreed by the court to be canceled and all rights of the defendant thereunder forfeited in accordance with its specific terms and the defendant decreed to return to the plaintiff all machinery, equipment, etc., received by it from the plaintiff in accordance with the terms of the contract, and that there be decreed to the plaintiff the right perpetually to enjoy and posssess this patent and patent rights free from any

and all claims or interference of the defendant, and that defendant be enjoined from setting up or claiming any right, title or interest in the said property and property rights, and for general relief.

We have thus summarized the important and controling provisions of the contract because it will shorten as well as elucidate the opinion. After the demurrer to the complaint for insufficient facts was overruled by the court the defendant filed an answer, being a general denial, and counterclaim. The plaintiff filed its replication denying the matters set up in the counterclaim. The defendant's demand for a jury trial was denied, and upon the hearing by the court without a jury the findings were for the plaintiff and a decree was entered canceling the contract and requiring the defendant to return and deliver to the plaintiff all machinery, equipment, tools, etc., theretofore turned over to it by the plaintiff, and plaintiff was decreed to be the owner of, and to have the right and perpetually to enjoy and possess, the said properties and patent rights free and clear of any claims of the defendant, and defendant was enjoined from setting up or asserting any rights under the terms of the contract.

In the voluminous briefs filed by counsel for plaintiff in error who prepared the case for trial and who tried it in the district court, not all of the 64 separately assigned errors are discussed. He, himself, in the opening brief has condensed them into seven separate divisions which may further be thus narrowed and logically included in the three general heads: (1) The complaint does not show any ground for the exercise by the court of its equitable jurisdiction, because adequate and full relief may be given in an action at law for damages for breach of the contract and replevin to gain possession of the subject matter thereof. (2) The complaint does not ask or offer to do equity or that the parties be placed in statu quo by requiring plaintiff to restore the consideration for the contract which it received. (3) Error of the court in refusing to hear defendant's evidence in support of its af-

firmative defenses and counterclaim. In a much shorter and logical brief of counsel for plaintiff in error, who first appeared at the oral argument and were then permitted to file a separate brief, the questions for decision have been summarized substantially as we have just condensed them.

1. It is familiar learning that where a party to a contract has a full, complete and adequate remedy at law for its breach, equity will not intervene to give relief. The subject matter of this contract is a United States patent and the rights of the owner or holder thereunder. *Waterman v. Mackenzie,* 138 U. S. 252, 11 Sup. Ct. 334, is authority for the plaintiff's contention here that this written contract between these parties operated as an assignment to the defendant of the patent and all rights thereto. That being so this case is quite like that of *Ady v. Dodge,* 83 Colo. 99, 262 Pac. 921. The court there held that where one party to a contract keeps his part of it and the other refuses to perform, it is thereby terminated, and in that action we said that a decree of the lower court ordering the assignee defendant to reassign to the plaintiff certain applications for patents was proper. In the case before us the defendant corporation without any question failed to make performance of any of the covenants which it is required to perform under this contract. All of them were breached. At least the trial court so found upon conflicting evidence. Just how in an action at law in the nature of replevin, the plaintiff could secure possession of the intangible rights of a patent or a reassignment thereof counsel have not informed us. No other action at law has been suggested as one that would accomplish this object and it is not claimed that for a breach of the contract it will be practicable or possible for the plaintiff to prove the extent and amount of its damages. *Farmers' Loan & Trust Co. v. Galesburg,* 133 U. S. 156, 10 Sup. Ct. 316, was a case where the city of Galesburg had by ordinance given to one Shelton a franchise to construct and operate a system of water

works in the city for supplying to it and its inhabitants water for domestic and other uses. The city filed a bill in equity against the water company, assignee or grantee of Shelton, to set aside this contract contained in the ordinance, and it was objected to by the bond holders and others who were parties to the contract, that a suit for the setting aside and cancellation of the contract would not lie because a suit by the city for specific performance, or one to recover damages for nonperformance, would be an ample remedy. The Supreme Court held otherwise and ruled that a suit for cancellation was proper. This case was followed and its doctrine applied in *City of Columbus v. Mercantile Trust and Deposit Company of Baltimore*, 218 U. S. 645, 31 Sup. Ct. 105. Mr. Justice Lurton in the opinion said that, in a case like that which is now before us, the remedy by an action for damages is wholly inadequate. In both these cases it was held that where the plaintiff had waited a reasonable length of time for the defendant to perform, the plaintiff has a right to treat the contract as terminated and to invoke the aid of a court of equity to enforce its rescission.

It is true that forfeitures are not favored either at law or in equity, and it is sometimes said that equity will never interfere to enforce a forfeiture. That statement is too broad. A better statement of the doctrine is that equity will not decree a forfeiture unless the strict letter of the contract requires it. *Phares v. Don Carlos*, 71 Colo. 508, 208 Pac. 458. In this case the contract sought to be rescinded expressly stipulates that if the defendant defaults either in the payment of royalties or the other payments provided in the contract when and as they become due, or defaults in rendering quarterly statements and such default shall continue for a period of 60 days, the plaintiff shall have the right and option to cancel and forfeit the contract of agreement and to require return of all the articles and things which under the contract it assigned to the defendant. In the Ady case, supra, in which the plaintiff asked to have the patents reassigned

to him under the provisions of the contract, we said: "Ady's failure and refusal to further perform amounted to a termination. On such termination, the contract is plain that the inventions and patents shall be reassigned to plaintiff, and so the decree in this respect is right." In 9 C. J., p. 1182, § 47, the author, after stating the general rule that equity will not rescind a contract for its mere breach, states: "Limitations of Rule. While the general rule, as stated, is well settled, it is nevertheless not without limitations and qualifications. Where there is a positive provision in a conveyance that noncompliance with its terms shall render it inoperative, a court of equity has jurisdiction to cancel it on such ground. And in a large number of cases it has been held that courts of equity have jurisdiction to rescind and cancel contracts, where facts are established which clearly show that the inquiry [injury] caused by the breach is irreparable and that damages are wholly inadequate. In other words, unless the damages can be ascertained with reasonable certainty, rescission is a matter of right with restitution instead of compensation." In substance this action really is one to enforce a contract by bringing it to an end under the express provisions of the parties themselves who made it. They agreed that after the expiration of 60 days had elapsed, after the defendant failed to comply with its terms, ipso facto the contract was at an end.

Another case in point is *Farmers Co. v. Pawnee Co.*, 47 Colo. 239, 107 Pac. 286. The plaintiff company sought equitable relief against a forfeiture of a construction contract threatened by the defendant company for a failure of the plaintiff company to complete a system of reservoirs within the time specified by the contract. We held that the action would lie because whether the time clause of the contract was a condition precedent or subsequent, or a mere covenant, it was a substantial and essential part of the agreement of the parties and the plaintiff was bound to comply with it, and equity would not restrain the defendant from exercising its contract rights there-

under of terminating or canceling the same. This doctrine is just as applicable to the present case where the plaintiff company has elected to terminate the contract for the default of the defendant either to begin or prosecute business, to pay the royalty reserved, to make quarterly statements, or comply with any of its covenants. Plaintiff, therefore, would necessarily have relief in an action in equity by cancellation of the written contract when, as it is more than apparent, full, complete and adequate relief at law cannot be awarded. See also: *Carney v. Barnes,* 56 W. Va. 581, 49 S. E. 423; *Callanan v. K. A. C. & L. C. R. R. Co.,* 199 N. Y. 268, 92 N. E. 747; *Laurel Creek C. & C. Co. v. Browning,* 99 Va. 528, 39 S. E. 156.

2. The point relied on by defendant as to this branch of its argument is that when a plaintiff comes into a court of equity, he must come with clean hands and offer to do equity; and the equity which the plaintiff was required to do or offer to do in this case is the restoration to the defendant of $10,000 which defendant says the plaintiff received as a consideration for entering into the contract. The written contract does not say that any such consideration was paid or was to be paid by the defendant. On the contrary, it says that the consideration from the defendant is the payment of royalty and other payments mentioned, and the keeping of the covenants and agreements which the defendant is to perform after the contract was made. Assuming, however, that it is permissible for the defendant to prove, under one of its affirmative defenses, that $10,000 was given by defendant as one of the considerations for the assignment of the patent and the patent rights, certainly defendant cannot urge this objection without affirmatively showing that it paid to the plaintiff this sum. In one of the affirmative defenses it so alleges and, of course, the burden is upon the defendant to establish the same by preponderance of the evidence. The evidence in behalf of the plaintiff is that though the sum of $10,000 was paid by the defend-

ant company or some of its officers, to McIntyre, the president of the plaintiff company, the latter testifies positively that this sum was paid to him for certain shares of the capital stock of the plaintiff company which was his individual property and which he sold to some of the parties or officers of the defendant company for the agreed price of $10,000, and that such transaction occurred sometime after the contract was executed and formed no part of the consideration moving from the defendant to the plaintiff for the making of the contract. There was testimony in behalf of the defendant which was elicited from some of the defendant's stockholders or officers and an attempt was made to prove the same by other witnessses called by it, that the $10,000 in question was part of the consideration moving from it to the plaintiff for the contract. The plaintiff company has not offered to make restoration of this sum or any other sum because it says that it formed no part of the consideration, was with reference to an entirely different transaction and after the contract was made and entered into, although before a written contract was turned over to the defendant. The contract itself says that there were two duplicates of the contract signed by the respective parties and it is not clear what particular instrument, or contract, it was that the plaintiff retained, or delivered, but this makes no difference when they were identical and each party had, or was to have, a copy. The criticism by defendant's counsel of the rulings of the court as to this question is, in a sense, well founded. The court might well have heard additional evidence from the parties but we cannot say that its refusal was prejudicial error. The court evidently believed the testimony of McIntyre that this amount of money had nothing whatever to do with the execution of the contract but was a separate transaction. Further testimony upon the subject by witnesses would be merely cumulative, would not have been different from that received, and we cannot

say that prejudicial error was committed in this particular.

3. There were several affirmative defenses interposed by the defendant, such as payment of the $10,000 already referred to, nonperformance of conditions precedent or concurrent that the plaintiff failed to comply with, the inequitable conduct of the plaintiff that lulled the defendant into security, and damages for the nonperformance of these various covenants in which the plaintiff is said to have defaulted. We have read with care the bill of exceptions and find it practically imposssible to get any adequate notion of what defendant's counsel was trying to get into the record responsive to the affirmative defenses and counterclaim which defendant filed. The various offers of evidence by defendant which the court rejected, were couched in such ambiguous language, and accompanied by such a labyrinth of words, as to make it uncertain what defendant's purpose was, or whether if that purpose had been clarified, the offer should have been accepted and the evidence admitted. These various offers of evidence were lengthy, involved and some of them, if separately made, might have been good, but in their accompaniment with others that are wholly untenable, the trial court was not required to separate the wheat from the chaff for the benefit of counsel. We cannot say, in the view we take of the law applicable to this case, that prejudicial error was thus committed. The court stated, and its statement is borne out by the record, that no showing had been made of performance by defendant of the contract; that is, the doing of the things which the contract required that defendant should do after the instrument was executed, or that the defendant stood ready to perform. The trial court might well have been a little more patient, probably, with the defendant's counsel, but if the latter intended to have his objections reviewed upon a writ of error he should have brought himself within the requirements of good practice, and made his objections as is required in such cases.

530

Complaint is made by defendant that McIntyre, the president of the plaintiff company, was also a director of the defendant company. Just why it is that the plaintiff should be penalized for this we are not told. McIntyre could not well have become a director of the defendant company had not the stockholders or board of directors thereof have consented thereto. No specific thing that McIntyre committed is pointed out that has the effect of defeating this action. We find nothing in this record that shows that McIntyre was guilty of any wrongful conduct. The record does show, at least the trial court found, that the defendant has wholly failed to comply with any of its promises, and which it agreed to fulfill, as a consideration for the assignment.

We cannot interfere with this judgment and it is accordingly affirmed.

Mr. Chief Justice Whitford, Mr. Justice Adams and Mr. Justice Alter concur.